IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION, AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTH CAROLINA<br><br>      Plaintiffs<br><br>v.<br><br>SPARTANBURG COUNTY; CHUCK WRIGHT, in his official capacity as the Spartanburg County Sheriff; and ALLEN FREEMAN, in his official capacity as administrator of the Spartanburg Detention Center,<br><br>      Defendants. | Case No.<br><br><br>. |

**DECLARATION OF NUSRAT J. CHOUDHURY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, Nusrat J. Choudhury, declare as follows:

1.      I am a senior staff attorney with the Racial Justice Program of the American Civil Liberties Union Foundation ("ACLU") and licensed to practice law in the State of New York. I make this declaration based on personal knowledge, and I am competent to testify regarding the following facts.

2.      Attached hereto as Exhibit 1 is a true and correct copy of the Spartanburg County Detention Center's written policy concerning Inmate Contact and Visitation as it appeared on the website of the Spartanburg County Sheriff's Office on April 13, 2017.

3.      On December 1, 2016, I called and emailed Major Neal Urch to request permission for the ACLU, American Civil Liberties Union Foundation of South Carolina ("ACLU-SC"), and attorneys working with both organizations to conduct interviews with inmates. Major Urch returned my phone call. He told me to submit the request to then-Captain Allen Freeman and to identify the specific inmates with whom we wished to have meetings.

4.      Attached hereto as <u>Exhibit 2</u> is a true and correct copy of the email I sent to Major Urch on December 1, 2016.

5.      On December 7, 2016, I sent a letter via email to Captain Freeman requesting permission for the ACLU and ACLU-SC to meet with Detention Center inmates concerning civil rights issues. I specifically requested permission for lawyers of the ACLU, ACLU-SC, Upstate Law Group, LLC, and Terrell Marshall Law Group PLLC to conduct these meetings on behalf of the ACLU and ACLU-SC. I received an automated out-of-office message in reply, but did not receive any other response.

6.      Attached hereto as <u>Exhibit 3</u> is a true and correct copy of the email I sent to Captain Freeman on December 7, 2016.

7.      Attached hereto as <u>Exhibit 4</u> is a true and correct copy of the letter that I attached to the December 7, 2016 email to Captain Freeman, requesting permission to conduct attorney visits at the Spartanburg County Detention Center.

8.      Attached hereto as <u>Exhibit 5</u> is a true and correct copy of the automatic out-of-office reply I received from Captain Freeman on December 7, 2016 in response to my letter.

9.      On December 9, 2016, I forwarded the December 7, 2016 letter (Exhibit 4) to Sheriff Wright via email. Later that day, Sheriff Wright replied, stating that he was denying my request for visitation.

10.     Attached hereto as <u>Exhibit 6</u> is a true and correct copy of the email I sent to Sheriff Wright on December 9, 2016, and his reply denying visitation.

11.     Plaintiffs have not received any communications from Sheriff Wright or the County's attorneys following up on the Sheriff's email of December 9, 2016.

12.     Based on Sheriff Wright's statements regarding Spartanburg County's policy, I have not attempted to enter the Detention Center.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed in New York, New York, on the 18th day of April, 2017.                                                                    .

By: _Nusrat J. Choudhury_

Nusrat J. Choudhury, NYSBA #4538302

.

# EXHIBIT 1



**Sheriff Chuck Wright**
8045 Howard St.
Spartanburg, SC 29303



SPARTANBURG COUNTY
# SHERIFF'S OFFICE

# Inmate Contact - Visitation Policy

**While the courts have indicated that there may be some limited right to visitation, such right can be restricted or denied based on legitimate government interests related to the safe, orderly, and secure operation of the facility; to prevent continued criminal activities; or other similar concerns. In such cases where visitation has been restricted and/or denied, alternative means of communicating with family and friends may be established via correspondence through the U.S. Mail and/or via the use of the inmate telephone system as may be appropriate.**

Generally, an inmate detained in the Spartanburg County Detention Facility (jail) is granted one (1) hour of visitation per week, unless such privilege has been restricted as noted above. To provide the inmate with an opportunity to visit with friends and relatives as well as maintain a safe and secure environment, each inmate housing unit will be assigned a specific day of the week for visitation. Each assigned visitation day will rotate weekly so the same housing unit will not be restricted to just one particular day of the week. An officer will come to each inmate's housing unit on Saturday and Sunday of each week with a list of available time slots. Each inmate will be asked to select one (1) time slot from the available slots with the understanding that due to limited visiting facilities; the number of inmates housed in the facility; and other factors, that there will be times that a particular time slot that an inmate desires may not always be available. Note: Inmates who enter the facility after the list has been completed and/or during the week will have to wait to the next weekend, before they are eligible to schedule visits unless otherwise permitted within this policy. Once an inmate has selected one (1) slot that he/she desires for their assigned visitation day, he/she will then be responsible for notifying their friends/relatives of their assigned day and their chosen time. Note: after the inmate has selected their time slot for their visitation day, this information will not be given to the public due to security reasons.

## II. VISITATION RULES

   A. **Times selected for visits.** Except in cases where an inmate has some form of mental disability and comprehension, <u>facility staff will not inform visitors of such scheduled visits.</u> The reason for this policy is as follows:

      1. The inmate needs to assume responsibility since he/she best knows how to contact family and friends and what times best suits their individual schedules.

2. In the past, conflicts have developed between girlfriends and wives; parents and spouses; and others over visits. The potential for such conflict is reduced when the inmate makes the notification of who he/she wishes to visit.

**B. Visitors must be present at the jail at least thirty (30) minutes prior to the scheduled visit to sign-in**. Visitors arriving late will not be permitted to visit.

**C. All visitors, with the exception of small children, must have and present a picture identification (i.e. a driver's license or state identification card).**

**D. All visitors are expected to act in an orderly manner and that they are to dress appropriately.** All visitors are to be dressed appropriately, including wearing appropriate footwear. Visitors who appear without shoes and/or dressed inappropriately will be prohibited from visiting. Inappropriate attire is defined as (but not limited to) the following: Clothing exposing breasts; cleavage; buttocks or genitalia; shorts, skirts, or dresses shorter than mid thigh; bare midriffs; sheer (see-through) clothing and/or clothing that allows undergarments to be seen or exposed; any other clothing of an inappropriate nature. Male and female visitors found deliberately exposing his/her chest; breasts; or genitalia to others, will at a minimum be removed from the visiting area with all future visits denied; and where appropriate, criminal charges will be sought and prosecuted to the fullest extent of the law.

E. **Visitors who appear under the influence; act in a disorderly manner; verbally or physically threaten officers and staff; attempt to furnish contraband; attempt to rescue a prisoner(s) and/or aid in an escape; carry a firearm and/or a concealed pistol; willfully damage jail fixtures; or commit violations of the criminal codes of the State of South Carolina while on jail property are subject to arrest and prosecution for such violations.**

**F. Visits by children are limited as follows:**

1. Visitation by children is limited to immediate family i.e. sons; daughters; grandchildren; brothers; and sisters. Nieces; nephews; and others are not permitted.

2. Only two children are permitted to visit without prior approval at any given time.

3. Children count as one of the two approved visitors per visiting slot.

4. Children must be accompanied by a parent or legal guardian, and such person is to be responsible for staying with the child/children and ensuring that appropriate levels of supervision and behavior are maintained.

5. Such visits shall not be in violation of court orders, and all court orders will be enforced.

6. For the purposes of this policy a child is anyone under eighteen (18) years of age.

**G. All Visitors are subject to search.** Generally, all visitors to the facility will be required to pass through an electro-magnetic metal detector and/or have a hand held metal detector passed over their person to detect any hidden weapons in their possession. In the event that the detector(s) is broken or not available, an officer of the same sex, except under limited and exigent circumstances, will conduct a "pat-down" search of the visitor's person. All metal objects; keys; knives; nail files; and other objects that can readily be used as a weapon are prohibited from

entering the facility. In the event that such items are discovered, the visitor will be requested to return the items to his/her vehicle where they are to be secured. Lockers are available in which to store car keys and other small items. As a rule, strip searches are not authorized for visitors, except as follows:

1. During a search using the metal detector and/or pat-down search, a weapon is discovered. Based on probable suspicion/belief that other weapons may exist, a strip search may be conducted in conjunction with an arrest.

2. During the initial pat-down search, it is discovered that a person has illegal drugs in his/her possession, then based on probable suspicion/belief that other drugs may exist, a strip search may be conducted in conjunction with an arrest.

3. In conjunction with a search warrant based on probable cause as issued by the court.

4. If drugs and/or weapons are detected in handbags; briefcases; and/or in other items carried by the visitor(s), then a strip search based on probable suspicion/belief that other such items may exist may be conducted in conjunction with an arrest.

5. If a visitor is caught in the act of "dropping off" drugs or weapons to an inmate, then a strip search may be conducted in conjunction with an arrest based on probable suspicion/belief that other items may exist.

6. Should a visitor refuse to submit to a search whether by passing through the metal detector and/or a physical "pat-down" search, such refusal shall be sufficient grounds to terminate their visitation privilege, and such privilege shall not be restored unless the visitor appeals to the Director and/or his designee and provides sufficient reason as to why his/her privileges shall not be suspended permanently. The decision of the Director in such cases is final.

## H. The following shall be basis for termination and/or refusal for visits:

1. Security concerns

2. Failure to produce identification

3. Disruptive/disorderly behavior

4. Not on the inmate's approved visitor's list

5. Being under the influence of alcohol or drugs, including prescription medications

6. Refusal to submit to a search

7. Use of profanity

8. Lack of available space

9. Failure to conform to the required dress standards

10. Violation of existing court orders

4/14/2017

7:17-cv-01145-DCC     Date Filed 05/03/17     Entry Number 5-1     Page 8 of 30
Inmate Contact - Visitation Policy : Spartanburg Sheriff

11. Visitor found to be in violation of the state's criminal laws

12. Visitor arrived late

13. Failure to cooperate and/or abide by the officer's instructions

14. Visitation has been cancelled due to overriding facility concerns

15. Inmate to be visited has had his visitation privileges suspended

16. Inmate to be visited is acting inappropriately either prior to and/or during the scheduled visit requiring it to be terminated

17. The inmate is unavailable due to court appearance; unscheduled medical appointment; and/or other valid reason

18. Other matters related to the secure and orderly operation of the facility

**I. Visitors are reminded that those persons found in violation of applicable local; state; and/or federal criminal laws are subject to arrest, and will be prosecuted to the fullest extent of the law.**

**J. Visitors are generally not permitted to leave anything for an inmate except money in the form of cash during the scheduled visit.** The exceptions to this rule are as follows:

1. Upon prior approval, an inmate may have his/her clothing exchanged for another set of clean clothing, provided such clothing has not been seized as evidence in a crime. However, no exchange will take place sooner than 48 hours from the time of the individual's entry into the jail. If an inmate is in transient between facilities and clothing is not needed for a jury trial, such clothing will not be exchanged.

2. Clothing may be brought to the jail (Annex I-the court holding facility) for the inmate to wear on the day of court, provided the inmate is scheduled for a "jury trial," and the court has so advised the jail. Inmates making initial appearance for bond; motion hearings; and/or to enter pleas shall wear clothing as issued by the jail.

3. Family members may drop off medications for the inmate's use provided:

    a. The medication is in a prescription bottle and has been prescribed by a regular physician for the inmate.

    b. The medication can be identified by the medical staff.

    c. The prescription is currently valid; has not been abused or misused; and confirmation has been obtained by the prescribing physician.

    d. The jail physician and the pharmacist has reviewed and approved the continued use of the medication.

    e. Use of the medication, if approved, will not adversely affect the inmate's health due to his current physical condition.

f. Medications not approved will be returned to the family per applicable South Carolina State Law.

g. Family members **may not** leave cigarettes; food; drinks; books; postage stamps; writing materials; and/ or other items. All such items are available for sale at the jail's canteen. Books; Bibles; various religious materials; and magazines are available in the jail's library and/ or may be ordered through the mail or parcel delivery from **the publisher**.

h. In addition to the cash noted above, family and friends may also send money to an inmate via the U.S. Mail in the form of a postal money order and/or government check. **Do not send cash through the mail.** Monies not sent by U.S. Postal Money Orders and/or government checks will be returned to sender.

III. Scheduled Visiting Times

Males - Monday through Friday

Mornings

0730-0830 (8:30-9:30 am)

0840-0940 (8:40-9:40 am)

0950-1050 (9:50-10:50 am)

1100-1200 (11:00 am-12:00 pm)

Afternoons

1300-1400 (1:00-2:00 pm)

1410-1510 (2:10-3:10 pm)

1520-1620 (3:20-4:20 pm)

Evenings

1630-1730 (4:30-5:30 pm)

1910-2010 (7:10-8:10 pm)

2020-2120 (8:20-9:20 pm)

2130-2230 (9:30-22:30 pm)

Females -Saturday and Sunday

Mornings

0730-0830 (7:30-8:30 am)

0840-0940 (8:40-9:40 am)

0950-1050 (9:50-10:50 am)

1100-1200 (11:00 am-12:00 pm)

Afternoons

1300-1400 (1:00-2:00 pm)

1410-1510 (2:10-3:10 pm)

1520-1620 (3:20-4:20 pm)

Evenings

1630-1730 (4:30-5:30 pm)

1910-2010 (7:10-8:10 pm)

2020-2120 (8:20-9:20 pm)

2130-2230 (9:30-22:30 pm)

## IV. Professional Visitors

Visits by law enforcement officers; and/or other professional visitors will be permitted at any reasonable time between 8:00 am and 10:00 pm Monday through Friday based on the availability of visiting space; whether the inmate is physically available; the visit does not interfere with scheduled medical appointments; court appearances; and/or other scheduled activities or unless there are overriding reasons not to permit such visits based on safety; security; and/or other legitimate concerns. To assist the facility in making sure that visiting space is available and to help eliminate any unnecessary delays and/or trips to the facility by the visitor, it is requested that all such visits should be scheduled in advance through the Director's Office. The facility reserves the right to restrict such visits to non-contact visits as determined to be appropriate by the jail staff. Professional visitors who may have family members present in the facility are requested not to abuse their privilege as a professional visitor and attempt to circumvent the normal visitation policy by using their special status. Persons found in violation will have such privilege/status suspended.

## VI. Requests For Inmates to Visit Hospitalized Relatives

Frequently, requests are made to allow inmates to visit hospitalized family members. As a general rule, such requests are not honored, except under very limited circumstances. While the jail staff attempts to be empathetic to inmates and their families, the jail has a greater duty to the citizens

and public that they serve. As with any transport outside the confines of the jail, there are inherent risks. The risks include the potential for escape by the inmate; the possibility that someone will attack the inmate; the possibility that someone will attack the escorting officer(s); the possibility that citizens/bystanders may be indirectly exposed to inappropriate behavior and/or possible injury should an incident occur; the potential for disruptions to the hospital staff and other patients; increased stress to the patient being visited; etc. As a result, visits to the hospital are restricted to situations where the potential death of an immediate family member is imminent, with the following stipulations:

A. Security is the overriding factor, and thus, even though a family member may be critically ill, such visit can be denied to ensure public safety.

B. Such visits are scheduled only with the approval of the attending physician and hospital staff.

C. All such visits are unannounced and scheduled only as officers and staff are available.

D. Inmates will be dressed in orange transport clothing and in full restraints. Restraints will not be removed nor civilian attire approved.

E. Such visits, if approved by the Director, will be limited to no more than fifteen (15) minutes.

F. Immediate family members are defined as follows: Spouse; children; parents; grandparents; brothers; and sisters only without exception.

## VII. Requests to Visit Hospitalized Inmates

From time to time, it may become necessary to hospitalize individuals detained in the jail. Should such event become necessary, an officer and/or officers will be assigned to the inmate in an effort to prevent and/or deter the potential for escape; to prevent someone from injuring the inmate while under the jail's care; and to protect the public. As a general rule, hospitalized inmates are not permitted visits in an effort to protect the public's safety and to reduce the potential for disruption to the hospital and its patients. However, if the inmate's condition is critical, arrangements may be made through the Director's Office for limited numbers of the inmate's immediate family members to visit him/her at scheduled times as coordinated by the jail and hospital staff. Should such visits be approved, family members are reminded that the inmate is still in the custody of the jail and under the control of the officer(s) assigned to the hospital, and as such, the "walls of the jail have simply moved to the hospital." As a result, family members may not bring food; money; and/or any other items to the inmate, no exceptions. Visits are to be limited to only fifteen (15) minutes and then only as scheduled. Family members may not stay in the room nor congregate outside in the hallway. Failure to cooperate with the officers and the established schedule will result in all future visits being terminated and where appropriate, criminal charges filed.

## VIII. Requests for Inmates to Attend Funerals - Family Visitation

A. Occasionally, requests are made for inmates to attend funerals. Due to the following, all such requests are denied:

1. Safety and security concerns related to the inmate; the officers; and the public.

2. Potential for escape.

3. Potential for officers to be injured.

4. Potential for injury to members of the public.

5. Prior to stopping the practice of escorting inmates to funerals in the mid to late 90's, situations developed whereby family members attempted to physically separate the officer and inmate from each other; attempted to intimidate the officer into allowing the inmate to sit with the family; inmates physically fell to the floor and refused to get up; inmates although allowed to dress in civilian clothing were required to wear restraints, but upon arriving at the services, refused to get out of the car, demanding that the restraints be removed as well, resulting in a disruption of the services; inmate attempted to "climb" into the casket with the deceased; officers have been "cursed" and racial epithets used; etc.

6. Transporting officers in other jurisdictions have been seriously injured and killed performing such duties.

B. However, in the event of such death, the facility will attempt to accommodate the family's period of grief as follows:

1. Family members may come to the jail and notify the inmate as to the family member's death. Such notification will be permitted to take place as privately as possible within the facility's capabilities. However, such notification as with all other visitation is non-contact in nature.

2. Providing there are no overriding security issues, the inmate will be permitted to view the deceased family member's body under escort by officers of the facility under the following conditions:

a. The deceased individual has to be an immediate family member: Spouse; child; parent; grandparent; or grandchild. Aunts, uncles, cousins, and/or other family members are not considered immediate family members for this policy.

b. The time of the viewing will be coordinated with the mortuary staff when other family members are not present.

c. The inmate will be dressed in orange transport clothing and fully restrained.

d. The viewing will be limited to no more than fifteen (15) minutes or less as circumstances dictate.

e. Such accommodation is restricted only to local inmates and their families. Inmates will not be transported outside of Spartanburg County for this purpose.

f. Ministers may visit the inmate at the facility to help comfort him/her in his/her time of need.

g. The Director reserves the right to not authorize such visits/viewing based on security issues and/or availability of staff and other resources.

## IX. Visits With Other Inmates

Inmates housed in the facility are not permitted to visit other inmates outside of their own

respective housing units for safety and security purposes. This same rule applies to inmates who are on home detention and/or those individuals out on bond who have co-defendants still housed in the facility.

## X. Visits for Court Returns

From time to time, inmates are returned from the South Carolina Department of Corrections and/or other facilities to appear in court. As a general rule, such inmates will not be permitted visits during their stay in the jail and will be returned to their place of origin as soon as possible, unless such inmate is to be housed in the jail for an extended period of time. In such event, the inmate may schedule visits the same as any other inmate so housed, unless such privilege has been suspended.

## XI. Policy Subject to Change

As with any policy or directive, the visitation rules are subject to change without notice, and the Director and his staff reserves the right to change; amend; delete; or otherwise modify as needs and circumstances change. Should any part of this policy be determined by a court of competent jurisdiction to be invalid, such determination does not invalidate other sections of the policy unless so stated by the court.

Breaking News Alerts
Enter Your Email Address...

Verify Code          Ri a Pr ∪ 

Go!

The Sheriff's Office is an Equal Opportunity Employer (and Section 504 of the 1973 Rehabilitation Act for Employment of Handicapped)



©2017 Spartanburg Sheriff. All rights reserved.

.

# EXHIBIT 2

| | |
|---|---|
| **From:** | Nusrat Jahan Choudhury |
| **To:** | "nurch@spartanburgcounty.org" |
| **Cc:** | sdunn@aclusc.org; Linda Moon |
| **Subject:** | Spartanburg Detention Center |
| **Date:** | Thursday, December 01, 2016 4:31:52 PM |

Major Urch, I hope you are well. My name is Nusrat Choudhury. I am an attorney with the American Civil Liberties Union. I work closely with Susan Dunn, the Legal Director of the ACLU of South Carolina.

I am writing to request permission for myself and Linda Moon, ACLU legal fellow, to interview certain inmates in the Spartanburg Detention Center on Monday 12/5, Tuesday 12/6, and Friday 12/9. We understand that attorney visits are to be scheduled in advance.

Please let us know if we can provide any information. Thank you for your assistance.

**Nusrat J. Choudhury**
Senior Staff Attorney
Racial Justice Program
American Civil Liberties Union
125 Broad St., New York, NY 10004
¦ 212-519-7876 ¦ nchoudhury@aclu.org
www.aclu.org



**Because Freedom Can't Protect Itself**

This email is intended only for the named recipient(s) above, and may contain information that is confidential and/or privileged. If you are not the intended recipient, please advise the sender immediately by reply email and delete this message and any attachments without retaining a copy.

.

# EXHIBIT 3

| From: | Nusrat Jahan Choudhury |
|---|---|
| To: | "AFreeman@spartanburgcounty.org" |
| Cc: | "Susan Dunn"; "Candy M. Kern-Fuller, Esq."; Toby Marshall (tmarshall@terrellmarshall.com); Eric Nusser (eric@terrellmarshall.com); "sarah@upstatelawgroup.com"; Linda Moon |
| Subject: | Request for Attorney Visitation at Spartanburg Detention Center |
| Date: | Wednesday, December 07, 2016 10:01:14 PM |
| Attachments: | Spartanburg Demand Letter 12072016.pdf |

Captain Freeman, I hope this message finds you well.  Attached is a letter following-up on the request of the ACLU of South Carolina and ACLU for permission to conduct attorney visits concerning civil rights issues with inmates presently incarcerated in the Spartanburg County Detention Facility.

We look forward to your prompt response.

Best,
Nusrat

**Nusrat J. Choudhury**
Senior Staff Attorney
Racial Justice Program
American Civil Liberties Union
125 Broad St., New York, NY 10004
¦ 212-519-7876 ¦ nchoudhury@aclu.org
www.aclu.org 



**Because Freedom Can't Protect Itself**

This email is intended only for the named recipient(s) above, and may contain information that is confidential and/or privileged.  If you are not the intended recipient, please advise the sender immediately by reply email and delete this message and any attachments without retaining a copy.

.

# EXHIBIT 4



**VIA E-MAIL**

December 7, 2016

Captain Allen Freeman
Spartanburg Detention Center
8045 Howard St.
Spartanburg, SC 29303
afreeman@spartanburgcounty.org

Dear Captain Freeman,

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
F/212.549.2654
WWW.ACLU.ORG

OFFICERS AND
DIRECTORS
SUSAN N. HERMAN
PRESIDENT

ANTHONY D. ROMERO
EXECUTIVE DIRECTOR

ROB REMAR
TREASURER

We are attorneys with the American Civil Liberties Union ("ACLU") and the ACLU of South Carolina. The ACLU is the nation's oldest civil liberties organization and has defended the rights of individuals for over 90 years. The ACLU of South Carolina is the South Carolina affiliate of the ACLU. We write to request permission to conduct attorney meetings with individuals in your facility concerning civil rights issues. Denying access for these visits would abridge core constitutional rights.

On December 1, 2016, Nusrat Choudhury of the ACLU emailed Major Neal Urch to request permission for Ms. Choudhury and Linda Moon, ACLU Legal Fellow, to conduct attorney interviews with specified inmates. Ms. Choudhury was notified that the request should be directed to you. On December 2, 2016, Candy Kern-Fuller of Upstate Law Group emailed you to request interviews with the same inmates on December 5, 6, and 7, 2016. Ms. Kern-Fuller offered a variety of times on these dates.

On December 2, 2016, you responded by email:

The only visit allowed would be those of Attorneys the represent Inmates in criminal, civil or family court proceedings. Our public defender has representation in the facility daily Monday-Friday. We do

not allow any visitation inside our facility otherwise.  My question do you represent the below in any of the proceedings I listed?

*See* Exhibit A.

Your position that only attorneys already representing the inmates in criminal, civil, or family court proceedings are permitted for visitation is contrary to U.S. constitutional law.

The U.S. Supreme Court has held that the Due Process Clause of the Fourteenth Amendment requires that inmates be provided with "a reasonable opportunity to seek and receive the assistance of attorneys." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974). Thus, "[r]egulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Id.* The Supreme Court has further held that this interviewing privilege must be extended to law students, paralegals, and other professionals employed by attorneys, and such individuals cannot be denied access to inmates only because they are not members of the bar. *Id.*

We request access to conduct attorney visits with the individuals on Ms. Kern-Fuller's list. As indicated in Ms. Kern-Fuller's email to you, we remain flexible and would be glad to accommodate appropriate hours for attorney visits on any of the following dates. Should access be granted on Thursday, December 8, 2016, or Friday, December 9, 2016, interviews will be conducted by Ms. Kern-Fuller, Ms. Moon, and Ms. Sarah Gable. Should access be granted on Monday, December 12, 2016, and Tuesday, December 13, 2016, interviews shall be conducted by Ms. Kern-Fuller, Ms. Gable, Mr. Toby Marshall, and Mr. Eric Nusser.

We look forward to your prompt response.

Sincerely,

Nusrat Choudhury
Senior Staff Attorney
Racial Justice Program
American Civil Liberties Union
nchoudhury@aclu.org

Susan Dunn
Legal Director
ACLU of South Carolina
P.O. Box 20998
Charleston, SC 29413-0998
p: 843-830-1571
sdunn@aclusc.org

cc:

Candy M. Kern-Fuller
candy@upstatelawgroup.com

Sarah Gable
sarah@upstatelawgroup.com

Toby Marshall
tmarshall@terrellmarshall.com

Eric Nusser
eric@terrellmarshall.com

Linda Moon
lmoon@aclu.org

.

# Exhibit A

-----Original Message-----
From: Freeman, Allen [mailto:AFreeman@spartanburgcounty.org]
Sent: Friday, December 2, 2016 6:14 PM
To: candy@upstatelawgroup.com
Subject: Re: Professional visitation

The only visit allowed would be those of Attorneys the represent Inmates in criminal, civil or family court proceedings. Our public defender has representation in the facility daily Monday-Friday. We do not allow any visitation inside our facility otherwise. My question do you represent the below in any of the proceedings I listed ?

Sent from my iPhone

On Dec 2, 2016, at 5:21 PM, Candy M. Kern-Fuller, Esq <candy@upstatelawgroup.com<mailto:candy@upstatelawgroup.com>> wrote:

I understand that your office accommodates professional/attorney visits from 8:00 am and 10:00 pm Monday through Friday, but requests that all such visits be scheduled in advance through the Director's Office.  I have left a message with your office and this email is a follow-up to that message

Linda Moon and I would like to schedule visits with the following inmates on Monday, December 5, 2016, between the hours of 6:30 p.m  and 10 p m :

Roker, Krist

Waters, Johnny Sims

Dominick, Kenneth Anthony

Douglas, Jerome David

Dupree, Jaquan Deandre

Mejia-Delgado, Jennifer Mejia

Cochran, Kelsey Blair

Oglesby-Wallace, Kaylin Lenise

Hardin, Damas Andrea


We would like to schedule visits with the following inmates on Tuesday,
December 7, 2016, between the hours of 9:00 a.m. ad 2:30 p.m.:

Norman, Robert Alexander

Young, Perry Lee

Jeter, Larry Floyd

Pagan, Jose Gonzalez

Foster, Raymond Quinn

Foster, Ryan Donovan

Fuller, Miranda Jeanette

Stevenson, Anthony Deontae

Foster, Jennifer Marie


Finally, we would like to schedule visits with the following inmates on
Wednesday, December 8, 2016, between the hours of 9:00 a.m. and 3:00 p.m.:

Meadows, Robert James

Fernanders, Tangenika Ailsa

Epps, Robin Nicole

Greene, Chesly Decota

Rions, Rachelle Lynn

Ferguson, Lakeith Cortez

Phillips, Kristin Marie

FW: Professional visitation - Linda Moon

12/7/16, 11:08 AM

Tinsley, Tyree Lewis

Waldrop, Melissa Renee

I would appreciate your confirming these appointments at your earliest
convenience.  Thank you, Candy Kern-Fuller, Esq.
Upstate Law Group, LLC
200 East Main Street
Easley, South Carolina 29640
(864) 855-3114<tel:%28864%29%20855-3114>
(864) 855-3446<tel:%28864%29%20855-3446> (facsimile)
** CERTIFIED MEDIATOR AND ARBITRATOR FOR OVER 15 YEARS **

CONFIDENTIALITY NOTE: THIS EMAIL WAS SENT FROM A LAW FIRM. IT MAY CONTAIN
PRIVILEGED OR CONFIDENTIAL INFORMATION AND IS INTENDED SOLELY FOR THE USE OF
THE PERSON(S) NAMED ABOVE OR THE PERSON(S) WHO IS THE INTENDED RECIPIENT OF
THE MESSAGE. IF YOU ARE NOT AN INTENDED RECIPIENT OF THIS EMAIL, YOU ARE
HEREBY NOTIFIED THAT ANY DISSEMINATION OR DUPLICATION OF THIS E-MAIL IS
PROHIBITED AND THAT THERE SHALL BE NO WAIVER OF ANY PRIVILEGE OR CONFIDENCE
BY YOUR RECEIPT OF THIS TRANSMISSION. IF YOU HAVE RECEIVED THIS E-MAIL IN
ERROR, PLEASE NOTIFY US BY COLLECT TELEPHONE CALL OR FAX TO THE NUMBER
INDICATED ABOVE.

.

# EXHIBIT 5

| | |
|---|---|
| **From:** | Freeman, Allen |
| **To:** | Nusrat Jahan Choudhury |
| **Subject:** | Automatic reply: Request for Attorney Visitation at Spartanburg Detention Center |
| **Date:** | Wednesday, December 07, 2016 10:01:28 PM |

I will be out of the office from 7-20 TO 7 24

# EXHIBIT 6

| From: | Wright, Chuck |
| --- | --- |
| To: | Nusrat Jahan Choudhury |
| Cc: | Susan Dunn; Linda Moon; candy@upstatelawgroup.com; Sarah Gable; Toby Marshall (tmarshall@terrellmarshall.com); Eric Nusser (eric@terrellmarshall.com) |
| Subject: | Re: Request for Attorney Visitation at Spartanburg Detention Center |
| Date: | Friday, December 09, 2016 12:29:15 PM |

We are speaking with our Attorneys and I am saying no to your requests at this time.
Should the Attorneys say anything different, Your request are denied.

Sent from my iPhone

On Dec 9, 2016, at 9:29 AM, Nusrat Jahan Choudhury <nchoudhury@aclu.org<mailto:nchoudhury@aclu.org>> wrote:

Sheriff Wright, attached please find a request for permission from the ACLU of South Carolina and the ACLU for permission to conduct attorney visits in the Spartanburg Detention Facility. We first requested permission over one week ago, and were directed to correspond with Captain Freeman. We sent him the attached letter on Wednesday and received an Out of Office message.

We understand that you are the chief decisionmaker for the facility, and respectfully forward the request for permission to conduct attorney interviews.

As explained in the attached, we are concerned that denial of attorney visits contravenes core constitutional rights.

We look forward to hearing from you soon.

Best
Nusrat

Nusrat J. Choudhury
Senior Staff Attorney
Racial Justice Program
American Civil Liberties Union
125 Broad St., New York, NY 10004
? 212-519-7876 ? nchoudhury@aclu.org<mailto:nchoudhury@aclu.org>
www.aclu.org<http://www.aclu.org/> < image001.gif><http://www.facebook.com/aclu.nationwide>
<image002.gif><http://www.twitter.com/ACLU>

<image003.jpg>
Because Freedom Can't Protect Itself

This email is intended only for the named recipient(s) above, and may contain information that is confidential and/or privileged. If you are not the intended recipient, please advise the sender immediately by reply email and delete this message and any attachments without retaining a copy.

From: Nusrat Jahan Choudhury
Sent: Wednesday, December 7, 2016 10:01 PM
To: 'AFreeman@spartanburgcounty.org<mailto:AFreeman@spartanburgcounty.org>'
Cc: 'Susan Dunn'; 'Candy M. Kern-Fuller, Esq.'; Toby Marshall (tmarshall@terrellmarshall.com<mailto:tmarshall@terrellmarshall.com>); Eric Nusser (eric@terrellmarshall.com<mailto:eric@terrellmarshall.com>);
'sarah@upstatelawgroup.com<mailto:sarah@upstatelawgroup.com>'; Linda Moon
Subject: Request for Attorney Visitation at Spartanburg Detention Center

Captain Freeman, I hope this message finds you well.  Attached is a letter following-up on the request of the ACLU of South Carolina and ACLU for permission to conduct attorney visits concerning civil rights issues with inmates presently incarcerated in the Spartanburg County Detention Facility.

We look forward to your prompt response.

Best,
Nusrat

Nusrat J. Choudhury
Senior Staff Attorney
Racial Justice Program
American Civil Liberties Union
125 Broad St., New York, NY 10004
? 212-519-7876 ? nchoudhury@aclu.org<mailto:nchoudhury@aclu.org>
www.aclu.org<http://www.aclu.org/>  <image001.gif><http://www.facebook.com/aclu.nationwide>
<image002.gif><http://www.twitter.com/ACLU>

<image003.jpg>
Because Freedom Can't Protect Itself

This email is intended only for the named recipient(s) above, and may contain information that is confidential and/or privileged.  If you are not the intended recipient, please advise the sender immediately by reply email and delete this message and any attachments without retaining a copy.


<Spartanburg Demand Letter 12072016.pdf>