IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION, AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTH CAROLINA<br><br>Plaintiffs<br>v.<br><br>SPARTANBURG COUNTY; CHUCK WRIGHT, in his official capacity as the Spartanburg County Sheriff; and ALLEN FREEMAN, in his official capacity as administrator of the Spartanburg Detention Center,<br><br>Defendants. | Case No. |

**DECLARATION OF TOBY J. MARSHALL IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, Toby J. Marshall, declare as follows:

1.     I am an attorney licensed in the State of Washington and a member of Terrell Marshall Law Group PLLC ("TMLG"). I make this declaration based on personal knowledge, and I am competent to testify regarding the following facts.

2.     My firm has been providing assistance to the American Civil Liberties Union Foundation ("ACLU") and American Civil Liberties Union Foundation of South Carolina ("ACLU-SC") for their investigation into potential constitutional violations suffered by people who are prosecuted in South Carolina summary courts. The primary goal of our work has been

to interview inmates in the state's county jails, including the Spartanburg County Detention Center.

3.    On December 12 and 13, 2016, I visited the Spartanburg County Detention Center with Eric Nusser, who is also an attorney at TMLG, and Howard E. Sutter III, an attorney with Upstate Law Group, LLC, to interview inmates on behalf of the ACLU and ACLU-SC.

4.    During our first visit to the Detention Center on December 12, 2016, Mr. Nusser, Mr. Sutter, and I provided the officer at the front desk with a list of inmates we wanted to interview.  The officer identified the locations of the inmates and told us that some were being housed on-site at the Detention Center while others were being housed off-site at the Annex 2.

5.    The officer looked at our driver's licenses and bar cards, issued us name tags, and allowed us to enter the Detention Center.  Mr. Nusser, Mr. Sutter, and I passed through a metal detector on our way into the secured area of the facility.

6.    The officer did not ask Mr. Nusser, Mr. Sutter, or me whether we represented any of the inmates on our list.  The exchange with the officer lasted approximately five minutes before we were granted access to the Detention Center.

7.    After entering the Detention Center, Mr. Nusser, Mr. Sutter, and I met with female inmates inside a room in the booking area.  Detention Center guards had informed us that female inmates were housed in a pod next to the booking area and could be brought to the booking area quickly.  The officers arranged to have the female inmates come to the booking area to meet with us.  The first inmate arrived within a few minutes.

8.    On December 13, 2016, Mr. Nusser, Mr. Sutter, and I returned to the Detention Center to interview additional inmates.  A different officer from the day before was sitting behind the front desk.  We informed him that we wished to speak with the inmates on our list.

The officer identified the location of the inmates, then looked at our driver's licenses and bar cards, issued us name tags, and allowed us to enter the Detention Center.

9.      The officer did not ask us whether we represented any of the inmates on our list. The exchange with the officer lasted approximately five minutes before we were granted access.

10.      Mr. Nusser, Mr. Sutter, and I again met with female inmates inside a room in the booking area.

11.      After speaking with the female inmates on our list, Mr. Sutter left the Detention Center and Mr. Nusser and I met with male inmates inside rooms in the pods where each inmate was housed.  Mr. Nusser and I traveled between the booking area and three separate pods located in different parts of the Detention Center.  We were not escorted by guards or jail staff nor questioned about our presence inside the Detention Center.

12.      On December 13, 2016, Mr. Nusser and I also visited the Annex 2, an off-site facility housing additional Spartanburg County inmates.  We informed the officer at the front desk that we wanted to speak to a number of inmates.  The officer looked at our driver's licenses and bar cards and allowed us to enter the secured area of the facility.

13.      The officer did not ask us whether we represented any of the inmates on our list. The exchange with the officer lasted approximately three minutes before we were granted access.

14.      Once inside the Annex 2, Mr. Nusser and I spoke with the inmates inside a room that was located in a hall between the areas in which the inmates were housed.  We were not escorted by guards or jail staff nor questioned about our presence inside the Annex 2.

15.      On January 31, 2017, Mr. Nusser and I visited the Detention Center with Ryan Fowler, an ACLU-SC legal intern.  We told the officer at the front desk that we wished to speak with the inmates on our list, and the officer identified each inmate's location.

16.    The officer looked at the driver's licenses and bar registration cards Mr. Nusser and I presented.  The officer also looked at Mr. Fowler's driver's license and student identification card.  The officer printed out name tags for us and allowed us to enter the secured booking area of the Detention Center.

17.    The officer did not ask us whether we represented any of the inmates on our list.  The exchange with the officer lasted approximately five minutes before we were granted access.

18.    The officer did not require us to pass through a metal detector.  Although a hand-held metal detector was sitting on the front desk, the officer did not use it to screen us.  The officer did not pat us down or in any other way check us for items that might create a security threat.

19.    Inside the booking area, we met with Officer T. Wilson, who made a copy of our inmate list.  Officer Wilson did not ask us at that time whether we represented the inmates on the list.  He told us we could speak with inmates inside the room we had used previously and called for two or three inmates to come down to the booking area.  The first inmate arrived within a few minutes.

20.    Approximately five minutes into the first meeting, Officer Wilson opened the door and interrupted our conversation with the inmate.  He asked us why we were talking with the inmates and whether we represented any of the inmates on the list.  I explained to Officer Wilson that we were interviewing the inmates regarding alleged constitutional violations and that we did not represent any of the inmates at that time.

21.    Officer Wilson responded that Mr. Nusser, Mr. Fowler, and I would have to leave the Detention Center because we did not represent any of the inmates on the list.  Officer Wilson

said that Spartanburg County has a policy prohibiting attorneys from speaking with inmates the attorneys do not already represent.

22.     I tried to discuss the matter further with Officer Wilson, but he said we would have to speak with Major Allen Freeman, the director of the Detention Center.

23.     Officer Wilson escorted Mr. Nusser, Mr. Fowler, and I across the Detention Center to Major Freeman's office.  Major Freeman introduced himself and told us it was the Detention Center's policy to prohibit attorneys from speaking with inmates in person unless the attorneys could show that they had a pre-existing attorney-client relationship with the inmates.

24.     I told Major Freeman that Mr. Nusser, Mr. Fowler and I were all working with the ACLU to investigate matters concerning inmates' constitutional rights and that Mr. Fowler was a legal intern with the ACLU-SC.  I told Major Freeman that we had a constitutional right to speak with inmates.

25.     Major Freeman said that he would not deviate from the stated policy unless it was at the direction of Sheriff Chuck Wright.  Major Freeman then said Mr. Nusser, Mr. Fowler, and I were prohibited from speaking with inmates and would have to leave the Detention Center.

26.     Officer Wilson escorted Mr. Nusser, Mr. Fowler, and I out of the Detention Center.

27.     Based on Major Freeman's statements regarding Spartanburg County's policy, Mr. Nusser, Mr. Fowler, and I have not returned to the Detention Center or Annex 2 since January 31, 2017.

I declare under penalty of perjury under the laws of the United States and the State of

*South Carolina* the foregoing is true and correct and that this declaration was executed in

Seattle, Washington, on the *20TH* day of *April* , 2017.

By: _____

Toby J. Marshall, WSBA #32726